THE PEOPLE, PLAINTIFF AND RESPONDENT, *v*. CERECEDO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in a Prosecution for the Sale of Lottery Tickets.

No. 672.—Decided June 23, 1914.

LOTTERY—PURCHASER OF TICKETS—ACCOMPLICE—EVIDENCE.—The purchaser of lottery tickets is not an accomplice of the vendor, therefore his testimony is admissible without corroboration.

ID.—EVIDENCE.—After an examination of the evidence in this case it was held that it was sufficient to prove the offense of the sale of lottery tickets by the accused.

EVIDENCE—OBJECTION.—When a court is trying a criminal case it will not consider an objection made to the manner in which documents properly offered in evidence and essential to the case may have been obtained.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

*Messrs. Travieso & Iriarte* and *Jacinto Texidor* for the appellant.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The pertinent part of the information in this case reads as follows:

"In San Juan, of the judicial district of the same name; the said Manuel Cerecedo sold to Francisco Castañeda on one of the days of the month of August, 1913, a certain number of Santo Domingo lottery tickets for a fixed sum of money. This is contrary to the law in such case made and provided and against the peace and dignity of The People of Porto Rico."

The accused pleaded not guilty and after a trial the District Court of San Juan, Section 2, rendered a judgment of conviction of an offense against the Lottery Act and sentenced the defendant to one month in jail and the payment of the costs. From the said judgment the present appeal was taken.

In his brief the appellant assigns and argues the following three errors:

1. That the district court erred in admitting in evidence the testimony of Francisco Casteñeda which was not corroborated by other independent evidence sufficient to show the relation of the accused to the commission of the crime with which he is charged.

2. That the court erred in admitting in evidence an account book containing one of the accounts which the prosecutor who offered it calls Castañeda's account.

3. That the court erred in admitting in evidence an account book and a letter book offered by The People as seized in the

search made by Detective St. Elmo in Cerecedo's house by virtue of a search warrant issued by the Municipal Judge of San Juan.

Let us examine the first error. The evidence in this case consisted: (*a*) Of the testimony of witness Francisco Castañeda who testified that he went to Cerecedo's house in the month of August on business about a horse and

"* * * when he was about to leave, Cerecedo proposed to the witness that he dispose of fifty or a hundred tickets in Río Piedras and the witness told him to send them and he would see whether he could dispose of them; that Cerecedo required him to sign a paper which read as follows: 'Received from Mr. Cerecedo 25 silk handkerchiefs at $2.25 each'; that the witness did so and when the *fiscal* showed him a paper he said that it was the paper which he signed on the same day he went on the business about the horse; that the 25 silk handkerchiefs were 25 tickets of the Father Billini Lottery of Santo Domingo * * *.

"That later he received 25 tickets of the Father Billini Lottery of Santo Domingo, sent to him addressed to post-office box 131 and he has not yet paid for them because he sent them to Caguas to be sold there and about that time the search took place; that about five or six days later he found in his post-office box, number 131, an envelope containing a paper on which was written: 'Francisco Castañeda—Please remit money in draft to be forwarded to its destination. If you wish merchandise come soon as only a few days remain.'

"That there were 25 tickets of the drawing of September 7 at $2.25; that his post-office box at Río Piedras is number 131. In answer to questions put by the defense he testified that he had purchased a horse from Bernabé Martínez in Humacao and that as he did not pay cash therefor, security was demanded and he offered the signature of Virella which Martínez accepted provided that Cerecedo would accept also, as Martínez was doing business with Cerecedo and had to make him remittances every month; that he went to see Cerecedo and that was his first and last interview; that then Cerecedo offered him the ticket business and he took the tickets to sell in Río Piedras by placing them with someone who would gain the difference between the $2.25 which he paid for them and $3, at which price they were selling * * *."

(*b*) Of the testimony of Fernando J. Géigel, Municipal Judge of San Juan, that he issued the search warrant "by virtue of affidavits presented to him affirming that Cerecedo was engaged in the sale of lottery tickets" and that he was present at the search. The witness identified two books which had been seized in Cerecedo's house, one from a small desk used by Cerecedo for his private business, as he said, and another from a large desk in Cerecedo's office.

(*c*) Of the testimony of Walter M. St. Elmo, Chief of the Bureau of Information of the Government, who made the search and found, among other things, "more than 1,000 lottery tickets and a contract signed by Cerecedo for the purchase of 10,000 Santo Domingo tickets each month, some books, papers and lists of prizes." The witness identified the two books which the *fiscal* showed him.

(*d*) Of an account appearing in one of the books seized and identified, as follows:

| "Terms. Box 131. | | Franco. Castañeda—Name, | | | | Río Piedras. | |
|---|---|---|---|---|---|---|---|
| Date | | Items. | | | | Debits. | |
| 9 | 7 | 25 | 2 | 35 | | 58 | 75 |

(*e*) Of a letter book, which was the other book seized and identified, on folio 2 of which there appears an account in the name of Francisco Castañeda identical to that already introduced.

The foregoing evidence taken together creates a clear and convincing impression on the mind of the court that the accused was engaged in the lottery-ticket business. In our opinion there is no doubt whatever about this. Let us see whether the specific act with which the accused was charged was duly proved.

The said specific act consisted in the sale of tickets by the accused to Castañeda. After considering the testimony of Castañeda it cannot be concluded that the transaction was

a cash sale, but it may be deduced that when Cerecedo sent the tickets to Castañeda the latter became responsible to Cerecedo for their price. In fact it was a sale on credit. Castañenda, in turn, was going to sell the tickets to other persons, but for his own account and risk and not as Cerecedo's agent. When Cerecedo wrote to Castañeda after the contract was made he did not ask him for an account of sales of the tickets, but for payment of the full price of the tickets. This being so, it may be concluded that the specific act with which the accused was charged in the information was also proved at the trial.

As to the probatory value of the testimony of Castañeda, we will say that if Castañeda be regarded as a simple purchaser, then he is not an accomplice and his testimony need not be corroborated. See the case of *The People* v. *Vázquez*, 19 P. R. R., 991, and that of *The People* v. *Cerecedo* (appeal No. 671) which we have just decided. And if Castañeda be considered as an accomplice, there is no doubt that the papers seized in the house and in the presence of Cerecedo corroborate his testimony in the form required by law regardless of the documents presented by Castañeda.

Let us examine the second error. The appellant contends in his argument that the books admitted in evidence were not properly identified. In our opinion the appellant is mistaken. The books were seized when Cerecedo's house was searched under a warrant of the Municipal Judge of San Juan which was issued by virtue of affidavits presented to him affirming that Cerecedo was engaged in the sale of lottery tickets, and they were found while the accused was present, in a private desk belonging to him and in another large desk in his office. And the entries in said books offered in evidence, when examined in connection with the testimony of witness Castañeda, clearly refer to the offense charged.

Let us examine the third and last of the errors assigned. The appellant contends that the court erred in admitting in evidence some books which were seized by virtue of a search

warrant in violation "of the provisions of the Fifth Amendment to the Constitution of the United States which protects all persons against any attempt to make them testify against themselves in a criminal action."

The appellant raised this question for the first time at the trial of the case and we have already held in appeal No. 671 brought by the same appellant that, in accordance with the settled jurisprudence of American courts, when a court is trying a criminal case it will not take into consideration the manner in which the papers properly offered in evidence, and essential to the case being tried, were obtained.

In view of the foregoing and as it is not shown that any fundamental error was committed against the accused, the appeal is dismissed and the judgment appealed from affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.